# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| THE RETIREES OF THE GOODYEAR TIRE & RUBBER CO. EMPLOYEE HEALTHCARE TRUST COMMITTEE, | ) ) ) ) | CASE NO. 5:19-cv-1893 |
| PLAINTIFF, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION** |
| PAMELA STEELY, et al., | ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court is defendants' joint motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)[1] (Doc. No. 6 ["Mot."]). Plaintiff has filed a response in opposition (Doc. No. 9 ["Opp'n"]) and defendants filed a reply (Doc. No. 10 ["Reply"]). For the reasons set forth herein, the motion to dismiss is granted.

## I. BACKGROUND

On August 21, 2019, plaintiff The Retirees of the Goodyear Tire & Rubber Company Employee Healthcare Trust Committee ("plaintiff" or the "Trust Committee") filed a three-count complaint (Doc. No. 1 ["Compl."]) against defendants Pamela Steely ("Steely") and Eshelman Legal Group, Ltd. ("Eshelman Legal") (collectively, "defendants"). The complaint seeks "to enforce the terms and preserve the assets of an employee welfare benefit plan under the terms of the Employee Retirement Income Security Act of 1974 ('ERISA'), 29 U.S.C. § 1000–1461." (Compl. ¶ 1.)

---

[1] The Court construes the motion as being brought only under Rule 12(b)(1) for lack of subject matter jurisdiction since there is no separate Rule 12(b)(6) argument for failure to state a claim.

The Trust Committee was "established by a Settlement Agreement dated October 29, 2007 which settled a lawsuit titled *Redington, et al. v. The Goodyear Tire & Rubber Company*, 07-cv-01999, United States District Court for the Northern District of Ohio." (*Id.* ¶ 2.; *see* Doc. No. 9-1 (the "Settlement Agreement").)[2] "The Settlement Agreement calls for the establishment of The Retirees of the Goodyear Tire & Rubber Company Health Care Trust . . . to fund health care benefits for eligible retirees of the Goodyear Tire & Rubber Company." (*Id.*; *see* Doc. No. 9-2 (the "Goodyear Trust").) The Trust Committee "was established pursuant to the Settlement Agreement to serve as fiduciary of the Goodyear Trust." (*Id.*)

The Trust Committee alleges that it is "an employees' beneficiary association" under ERISA. (*Id.* ¶ 3 (citing 29 U.S.C. § 1002(4)).)[3] Pursuant to the Settlement Agreement, the Trust Committee was authorized to establish The Retirees of Goodyear Tire & Rubber Company Health Care Plan. (*Id.* ¶ 4; *see* Doc. No. 9-3 (the "Goodyear Plan").[4]) It further alleges that it is "authorized to bring this action on behalf of all the Goodyear Plan participants and beneficiaries to enforce the

---

[2] The parties to the *Redington* lawsuit were plaintiffs Gerald C. Redington, Bennett Toller, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Services Workers Industrial Union, AFL-CIO/CLC ("USW") and defendant Goodyear Tire & Rubber Company ("Goodyear"). A plaintiff class was certified as part of the Settlement Agreement. Although not specifically alleged in the complaint, the Court assumes that Steely was a member of the class; defendants do not assert otherwise.

[3] Defendants' entire argument in their motion to dismiss is based on one question: "[D]oes the [Trust Committee] qualify as an 'employee benefit [sic] association?'" (Mot. at 34 (all page number references herein are to the page ID# assigned by the electronic filing system).) The Settlement Agreement in the *Redington* case states that "[t]he Court will, subject to Section 9 [dealing with Dispute Resolution], retain exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of this Settlement Agreement." (Settlement Agreement at 127.) Since formation of the Trust Committee (whose characterization is now being questioned) was authorized by the Settlement Agreement in *Redington*, given the very broad retention-of-jurisdiction language in that Agreement, before ruling on the issue raised by the motion to dismiss, this Court first inquired as to a transfer of the case either pursuant to the retention of jurisdiction or the district's related case rule, but the judge who handled the *Redington* case declined to accept transfer.

[4] The Goodyear Plan is sometimes referred to by the Trust Committee as the "RGTRC Plan."

terms of the Goodyear Plan and to protect the assets of the Goodyear Plan under 29 U.S.C. § 1132(a)(3) and federal common law." (*Id.* ¶ 5.)

The particular dispute underlying the complaint relates to reimbursement of medical benefits in the amount of $434,688.45 paid by the Goodyear Plan on behalf of Steely, who sustained personal injuries in an accident with a golf cart. (*Id.* ¶¶ 11–12.) "The Goodyear Plan contains an express provision which provides for the Plan's right to be reimbursed from settlement proceeds recovered by a Plan participant in settlement of a bodily injury claim from any source." (*Id*. ¶ 13.) "The Plan further provides: 'By accepting [any] benefits advanced by the Plan . . . the Injured Participant acknowledges that any proceeds held by another person, held by the Injured Participant or by another, are being held for the benefit of the Plan. . . .'" (*Id*. (quoting Doc. No. 1-2 at 12).) Steely allegedly settled her personal injury claim for $439,500.00 in April, 2019. (*Id.* ¶ 15.) The Trust Committee alleges that "a portion of the settlement funds was distributed directly to [Steely] in violation of the Plan's lien." (*Id.* ¶ 19.) It further alleges that defendant Eshelman Legal "is holding $145,000 of the settlement proceeds in its client trust account[,]" and "has paid itself a portion of the settlement funds as a legal fee in violation of the Plan's lien." (*Id*. ¶¶ 20–21.) "Defendants refuse to reimburse the Goodyear Plan from the proceeds of the aforementioned settlement which are held in their possession." (*Id.* ¶ 22.)

Defendants argue that this Court lacks subject matter jurisdiction because the Goodyear Plan is not a qualifying ERISA plan, having not been established or maintained by either an employer or an employee association. (Mot. at 36 (citing 29 U.S.C. § 1003).)

## II. DISCUSSION

### A. Legal Standard

The Sixth Circuit recognizes two kinds of motion to dismiss for lack of subject matter pursuant to Rule 12(b)(1): a facial attack and a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack questions the sufficiency of the pleading. *Id*. In deciding a facial motion to dismiss, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id*. A factual attack, on the other hand, is an attack on the factual existence of subject matter jurisdiction. *Id*. In deciding a factual motion to dismiss, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. (internal citation omitted). On this type of challenge, the Court has broad discretion to consider extrinsic evidence, including affidavits and documents, and can conduct a limited evidentiary hearing if necessary. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In either case, however, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986) (emphasis omitted).

### B. Analysis

Defendants present a factual attack, arguing that there is no federal question jurisdiction[5] because there is no proper ERISA claim. Defendants assert that the Goodyear Plan, which the Trust Committee seeks to enforce herein, can only be an "employee benefit plan" under ERISA if it was established or maintained by an "employer" or by an "employee organization . . .

---

[5] There can be no doubt that there is no diversity jurisdiction; although the amount in controversy is substantial, the citizenship of the parties is not diverse.

representing employees." (Mot. at 36 (citing 29 U.S.C. § 1003).) Defendants challenge the Trust Committee's allegation (*see* Compl. ¶ 3) that it qualifies as an "employee organization" under 29 U.S.C. § 1002(4), which defines "employee organization" as including "any employees' beneficiary association organized for the purpose in whole or in part, of establishing [an employee benefit] plan."

Although ERISA does not separately define "employees' beneficiary association," the United States Department of Labor ("DOL") has consistently applied the following criteria when making this determination:

> [A]n association or organization qualifies as an "employees' beneficiary association" within the meaning of section 3(4) of ERISA, only if **employees participate** in it *and* it meets the following criteria: (1) **membership is conditioned on employment status** — for example, membership is limited to employees of a certain employer or members of one union; (2) the **association has a formal organization**, with officers, by-laws or other indications of formality; (3) the **association generally does not deal with employers** (as distinguished from organizations described in the first part of the definition of "employee organization"); **and**, (4) the **association is organized for the purpose**, in whole or in part, **of establishing a welfare or pension plan**.

Opinion No. 2015-01A (ERISA), 2015 WL 6438141, at *3 (Oct. 19, 2015)[6] (citation omitted) (bolding added).[7] Therefore, defendants argue, the plaintiff Trust Committee, which established the Goodyear Plan and serves as its fiduciary (Compl. ¶ 4), must meet all these criteria for the

---

[6] These criteria were developed for application to the same term under the Welfare and Pension Plans Disclosure Act, 29 U.S.C. § 302 (1970), which was repealed in 1975 when ERISA was enacted as its successor. *Id*. n.4.

[7] In this opinion, the DOL was asked to determine whether a long-term disability ("LTD") program sponsored by the California Law Enforcement Association ("CLEA") was an "employee welfare benefit plan" under ERISA. Although noting that "it appears that the LTD program provides benefits described in [ERISA,]" 2015 WL 6438141, at *3, and that "CLEA appears to have some of the characteristics of an employees' beneficiary association[,]" *id.*, at *4, the DOL ultimately concluded that CLEA is not an employees' beneficiary association because its "membership is not conditioned on employment status nor do employees 'participate' in CLEA as the [DOL] has interpreted those requirements under section 3(4) of ERISA." *Id.*

Goodyear Plan to be a qualified ERISA plan established by an "employees' beneficiary association[,]" — a requirement for this Court's subject matter jurisdiction under ERISA.

Defendants point out that the Trust Committee consists of nine (9) members: "three appointed by the Service Workers' Union (USW), two retiree class members and four public members." (Mot. at 37.) Defendants cite to the Trust Committee's website for this information, but membership in the Committee is also identically defined in the Settlement Agreement (Settlement Agreement at 103) and in the trust agreement (Goodyear Trust at 135). Defendants point out that employees do not participate in the Trust Committee, nor is membership on the Trust Committee conditioned on employment status or membership in a single union. (Mot. at 37–38.) As a result, defendants argue, any plan created by the Trust Committee is not a qualifying ERISA plan that can form the underlying basis for this Court's subject matter jurisdiction.[8]

In opposition, the Trust Committee does not squarely address defendants' argument. Rather, it asserts that "the Goodyear Trust 'is intended to comply with the requirements of section 501(c)(9) of the Internal Revenue Code of 1986, . . . the applicable provisions of [ERISA] and section 302 of the Labor Management Relations Act of 1947 . . .[.]'" (Opp'n at 95 (quoting the trust agreement); *see* Goodyear Trust at 133.[9]) The Trust Committee further argues that it

---

[8] Defendants include no discussion of whether there may be a simple common law breach of contract claim here that could be brought under state law in an Ohio court. This Court need not comment on that question, except to be clear that this ruling does not address it.

[9] Section 501(c)(9) of the Internal Revenue Code ("IRC") exempts from taxation certain listed organizations, including "[v]oluntary employees' beneficiary associations providing for the payment of life, sick, accident, or other benefits to the members of such association or their dependents or designated beneficiaries[.]" But the implementing regulations for this statute make perfectly clear that the term as used in the IRC "is not necessarily coextensive with the term employees' beneficiary association as used in section 3(4) of [ERISA] and the requirements which an organization must meet to be an employees' beneficiary association [under ERISA] are not necessarily identical to the requirements that an organization must meet in order to be a voluntary employees' beneficiary association within the meaning of [the IRC]." 26 C.F.R. § 1.501(c)(9)-7. Therefore, even assuming that the Goodyear Trust qualifies under IRC § 501(c)(9) does not automatically make it an "employees' beneficiary association" under ERISA. It still must qualify under the criteria defined by DOL.

established the Goodyear Plan that is funded by the Goodyear Trust, and that it serves as the Plan administrator and as a fiduciary, both as defined by ERISA. The Trust Committee claims that the Goodyear Plan is limited to certain defined individuals (or their dependents) who were eligible for coverage under Goodyear's original medical benefits plan (the so-called "Original Plan") or who qualified for disability retirement. The Trust Committee explains: "In other words, all participants in [the Goodyear] Plan have one thing in common: They are all former employees (or spouses or dependents of former employees) of Goodyear . . . who were eligible to participate in the Original Plan negotiated by the USW." (Opp'n at 95.)

In reply, defendants argue that the Trust Committee has done no more than attempt to show that the beneficiaries of the Goodyear Plan meet the DOL's criteria for defining an "employees' beneficiary association," but not the Trust Committee itself — which is fatal to any ERISA claim.

Defendants have the correct view. As explained *supra*, under ERISA, a health care plan (such as the Goodyear Plan at issue here) is an "employee welfare benefit plan" only if it was

> established or maintained by an employer or an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). In determining whether the Trust Committee is an "employee organization" or an "employees' beneficiary association," this Court is contrained by the language of the Settlement Agreement, which states: "The [Trust] Committee is hereby formed to establish the [Goodyear] Trust and to exercise such authority set forth herein to carry out the purposes of the Trust. The Committee shall be comprised of four Public Members, three USW Members and two

Class Committee Members." (Settlement Agreement at 109.[10]) Therefore, the Trust Committee, as the entity that *established* the Goodyear Trust that funded the Goodyear Plan, must meet the criteria for an "employee organization," which includes an "employees' beneficiary association."[11] It is not the Goodyear Trust or the Goodyear Plan that must meet the criteria.[12]

Plaintiff fails in this regard. It cannot meet all the criteria set forth by the DOL for an "employees' beneficiary association." In particular, as properly argued by defendants, membership on the Trust Committee is not conditioned on employment (or former employment /retirement) status. The presence of the "Public Members" on the Trust Committee negates that criterion.[13]

The mere fact that the Trust Committee was created under the terms of the *Redington* Settlement Agreement, which generally mentions ERISA at several points (without specifying any particular statutory citation), does not insulate the Trust Committee from having to meet the criteria to establish itself as an "employees' beneficiary association."

Nor is it sufficient to show (which plaintiff has neither done nor even attempted) that, because the Original Plan *may* have been an ERISA plan, the Goodyear Plan created to replace it

---

[10] The trust agreement provides that "[t]he purpose of the Trust is to maintain, administer and subsidize the cost of any health care benefits or other benefits provided to Current Retirees, Eligible Retirees, their Beneficiaries, Surviving Spouses, and such other Participants and Beneficiaries as are permissible under section 501(c)(9) of the [Internal Revenue] Code as set forth herein[.]" (Goodyear Trust at 139.)

[11] The language of the Goodyear Plan further supports this conclusion. It states: "The Retirees of The Goodyear Tire & Rubber Company Health Care Trust Committee . . . as Plan Sponsor has established the Goodyear Retiree Health Care Plan, a welfare benefit plan designed to provide medical, dental and other health benefits for eligible Retirees (and their eligible spouses and dependents) of The Goodyear Tire & Rubber Company[.]" (Goodyear Plan at 163.)

[12] To attempt to apply the criteria for an "employees beneficiary association" to either the Goodyear Trust or the Goodyear Plan to conclude that either or both qualify as an ERISA plan would be circular, requiring a finding that either or both was an "employee organization" that established itself.

[13] The Settlement Agreement defines "Public Member" as "a health care, employee benefits, asset management, or ERISA expert, or similarly qualified person, who serves as a member of the Committee and is not appointed by USW . . . ." (Settlement Agreement at 106.)

8

under the terms of the Settlement Agreement must automatically be an ERISA plan, whether or not it was established by an "employer" or "an employee organization."[14]

Finally, even if the overall structure put in place by the Settlement Agreement *might* qualify as a "voluntary employees' beneficiary association" for tax-exemption purposes under the IRC,[15] that does not automatically mean, as clearly reflected in the relevant regulations, that the requirements were also met for establishing an "employee benefit plan" protected by (and enforceable under) ERISA. *See* 26 C.F.R. § 1.501(c)(9)-7.

Since plaintiff cannot establish that this lawsuit addresses an ERISA plan, defendants are entitled to dismissal for lack of subject matter jurisdiction. That said, the Court emphasizes that it takes no position on whether plaintiff may have a viable breach of contract claim. Absent diversity jurisdiction, this Court has no authority to decide that issue, even if plaintiff were permitted to amend the complaint.

---

[14] With certain exceptions (e.g., government employers; churches), an employer like Goodyear is not required to provide health care benefits for its employees; but, if it does so voluntarily, its plan must comply with ERISA. Goodyear apparently negotiated, as part of a series of collective bargaining agreements ("CBA"), to provide health care coverage to employees and retirees. Were it not for that separate contractual overlay, Goodyear would have been free to terminate any health care coverage at any time. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S. Ct. 1223, 131 L. Ed. 2d 94 (1995) (employers "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans[]"). But, in *Redington*, the plaintiffs alleged that, by shifting part of the cost of already-vested retiree health care benefits to the retirees themselves, Goodyear was breaching the CBA and, thereby, violating the Labor Management Relations Act ("LMRA") as well as ERISA. The parties agreed to settle the claims by setting up a funding mechanism "to maintain, administer and subsidize the cost of any post-retirement medical benefits provided to [r]etirees." (*Redington,* Doc. No. 28-4, Memorandum of Understanding ("MOU") at 523, incorporated into the Settlement Agreement (*see* Settlement Agreement at 102).) This funding mechanism allowed Goodyear to "shed its obligations to continue to provide such coverage for Goodyear's retirees." (MOU at 522.) It is not a foregone conclusion that the mechanism the parties negotiated in settlement of *Redington* necessarily constitutes an ERISA plan just because it was a substitute for Goodyear's Original Plan (as defined by the Settlement Agreement at 105).

[15] The trust agreement provides that "[t]he Trust, together with the Plan, is intended to constitute a 'voluntary employees' beneficiary association' under Section 501(c)(9) of the Code." (Goodyear Trust at 139.)

9

### III. CONCLUSION

For the reasons set forth herein, because there is no proper ERISA claim[16] here, defendants' joint motion to dismiss for lack of subject matter jurisdiction (Doc. No. 6) is **granted**. This case is closed.

**IT IS SO ORDERED**.

Dated: December 31, 2019

HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE

---

[16] The complaint also cites the Declaratory Judgment Act, 28 U.S.C. § 2201, as a basis for this Court's jurisdiction. Under these facts, the Court exercises its discretion to decline jurisdiction under that statute. *Pub. Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S. Ct. 580, 7 L. Ed. 2d 604 (1962) (the Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so"). Since there is no proper ERISA claim here, and no basis for diversity jurisdiction, any declaratory judgment regarding the parties' respective rights would amount to an advisory opinion. *See Bhd. Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp. 2d 689, 691 (E.D. Ky. 2002) ("[T]he Declaratory Judgment Act does not provide for its own subject matter jurisdiction; the plaintiff must establish that the district court has either diversity jurisdiction or federal question jurisdiction before the Court will entertain a declaratory action.").