PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE RETIREES OF THE GOODYEAR
TIRE & RUBBER CO. EMPLOYEE
HEALTHCARE TRUST COMMITTEE,

   Plaintiff,

   v.

PAMELA STEELY, *et al*.,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)

CASE NO.  5:19-CV-1893

JUDGE BENITA Y. PEARSON

**ORDER**
[Resolving ECF Nos. 29, 30]

   Pending are the parties' cross-motions for partial summary judgment on the issue of

whether the employee welfare benefit plan in this case arises under the Employee Retirement

Income Security Act ("ERISA").  ECF Nos. 29, 30.  The motions are fully briefed.  The Court

has been advised, having reviewed the record, the parties' briefs, and the applicable law.  For the

reasons set forth below, Plaintiff's motion is granted and Defendants' motion is denied.

### I. Background

#### A. *Redington* Lawsuit

   This action has been brought to enforce the terms of an employee welfare benefit plan

("the Plan") which provides health benefits to more than 25,000 individuals living in more than

45 jurisdictions.  ECF No. 24, ¶ 10.  The Plan arose out of a lawsuit filed in 2007 against

Goodyear Tire & Rubber Company ("Goodyear") by a class of Goodyear retirees[1] and USW[2], the

---

   [1] Plaintiffs' class in *Redington* included retirees from Goodyear Tire & Rubber
Company, Goodyear Dunlop Tire North America, Ltd. and its predecessor, Dunlop Tire
Corporation who had been eligible to participate in Goodyear's original plan.  *See* ECF
No. 29-5 at PageID #: 905 ("'Goodyear' *shall mean collectively* the Goodyear Tire &

(continued...)

(5:19CV1893)

labor union that represented Goodyear's employees. *Redington, et al. v. The Goodyear Tire & Rubber Company*, No. 5:07-cv-1999 (Adams, J.).  The retirees and USW alleged in the *Redington* lawsuit that Goodyear violated ERISA and labor law by announcing it would terminate certain retiree health benefits promised to its employees upon retirement.  *Redington,* ECF No. 12.

To resolve their dispute, the parties in *Redington* negotiated a settlement agreement ("Settlement Agreement") which provided for the formation of "The Retirees of the Goodyear Tire & Rubber Company Health Care Trust" ("Goodyear Trust") and the creation of the Plan. *See* ECF No. 29 at PageID #: 736; ECF No. 30-2.  The purpose of the Goodyear Trust was to "maintain, administer, and subsidize the cost of any health care or other benefits" to current and future retirees and their beneficiaries, ("the Participants") in the Plan.  ECF No. 30-4 at PageID #: 1152.

Eligibility in the Plan was limited to a class of: (1) retirees who separated from service with Goodyear on or before January 1, 2007 and on the date of separation were eligible for the Original Plan in effect on January 1, 2007 as negotiated with Goodyear and the USW; (2) subsequent retirees (including dependents eligible due to death of employee) who satisfy the eligibility requirements of the Original Plan; or (3) individuals designated by Goodyear as qualifying for a disability retirement benefit under the Goodyear pension plan.  ECF No. 29-5 at PageID #: 906; *Redington*, ECF No. 107 at PageID #: 2601-02.

---

[1](...continued)
Rubber Company, Goodyear Dunlop Tires North America, Ltd. and Dunlop Tire Corporation.") (emphasis added).

[2] "USW" is the acronym for the United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Industrial Union.

(5:19CV1893)

The Settlement Agreement also provided that the Goodyear Trust would establish and maintain a specific plan of benefits through a governance body–the Retirees of the Goodyear Tire & Rubber Company Employee Healthcare Trust Committee (Plaintiff, hereinafter "Trust Committee")–that would include appointees required to act on behalf of Participants in administering the Goodyear Trust. The Trust Committee includes: (1) two class members; (2) three USW members; and (3) four public members. ECF No. 30-2 at PageID #: 1001. The Settlement Agreement required Goodyear to fund the Goodyear Trust with an initial contribution of $1 billion. *Id*. at PageID #: 1003. Goodyear was bound by the Settlement Agreement to contribute additional payments to the Trust over time, pursuant to a collective bargaining agreement between Goodyear and USW. *See id*. at PageID #: 1003-06.

On August 22, 2008, Judge John R. Adams approved the Settlement Agreement in *Redington* after having certified a plaintiff class pursuant to Fed. R. Civ. P. 23(b)(2). *Redington*, ECF No. 107. Pursuant to the Settlement Agreement, on August 26, 2008, the Trust Committee enacted the Plan. ECF No. 29 at PageID #: 737. Goodyear has continued to fund the Plan for the benefit of its participants. ECF No. 30-3 at PageID #: 1143.

### B. Instant Action

The instant action was filed in August 2019 by Plaintiff, seeking to enforce the Plan's terms against Pamela Steely–a Participant in the Plan–and her counsel, Eshelman Legal Group, Ltd. ECF No. 1. Plaintiff alleges Steely sustained personal injuries in 2017 at Rocky Fork Ranch Resort in Kimbolton, Ohio ("Rocky Ranch") and, in the aftermath, the Plan paid medical benefits in the amount of $434,688.45 on Steely's behalf. ECF No. 24 at PageID #: 709-10. Steely settled her claim with Rocky Ranch for $439,500.00, and Eshelman Legal Group, Ltd.

3

(5:19CV1893)

holds at least some portion of the settlement proceeds.  *See id*. at PageID #: 710-11.  Plaintiff

avers Defendants have failed to reimburse the Plan in accordance with the Plan's terms.  *Id*. at

PageID #: 712.

Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction,

arguing the Plan was not governed by ERISA because it had been "established" and

"maintained" by the Trust Committee, an entity which Defendants argued did not qualify as an

"employees' beneficiary association" capable of establishing an ERISA plan.  ECF No. 6.  Judge

Sarah E. Lioi, initially presiding over the instant case, granted Defendants' motion to dismiss.[3]

Upon reconsideration, Judge Lioi vacated the prior orders granting Defendants' motion to

dismiss (ECF Nos. 11, 12) for having rested on an error of law.[4]  *See* ECF No. 20.  Judge Lioi

recused.  *See id.* at PageID #: 472 (having found the court already ruled upon the ultimate issue

in the case).

---

[3] Judge Lioi determined the court lacked subject matter jurisdiction, warranting dismissal, because the Plan did not qualify an employee welfare plan under ERISA. Judge Lioi's finding that subject matter jurisdiction did not lie hinged on a determination that the Trust Committee was not an "employee beneficiary association" which could maintain or establish an employee benefit plan under ERISA.  *See* ECF No. 11 at PageID #: 231-35 (stricken).

[4] On reconsideration, Judge Lioi found it was an error of law to have concluded Plaintiff failed to raise a colorable claim under ERISA.  *See* ECF No. 20 at PageID #: 470 (reconsidering dismissal after reviewing Sixth Circuit case law instructing the existence of an ERISA plan is not a jurisdictional prerequisite).  Judge Lioi vacated and struck from the record ECF Nos. 11 and 12, orders granting dismissal.  In ECF No. 20, Judge Lioi left open the question of whether the Plan arises under ERISA.  *See id*. at PageID #: 472 ("The Court need not address this question now and, given that it has denied defendants' motion to dismiss, the question will remain for another day.")

4

(5:19CV1893)

The matter was assigned to the Court.  At the Case Management Conference, the Court

and the parties agreed the parties would submit cross-motions for summary judgment on the

issue of whether the Plan is governed by ERISA.  *See* Minutes of Proceedings, May 4, 2020.

### II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required

to file affidavits or other similar materials negating a claim on which its opponent bears the

burden of proof, so long as the movant relies upon the absence of the essential element in the

pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has

failed to establish an essential element of his case upon which he would bear the ultimate burden

of proof at trial."  *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving

party to demonstrate the existence of genuine dispute.  An opposing party may not simply rely on

its pleadings.  Rather, it must "produce evidence that results in a conflict of material fact to be

resolved by a jury."  *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The

non-moving party must, to defeat the motion, "show that there is doubt as to the material facts

and that the record, taken as a whole, does not lead to a judgment for the movant."  *Guarino*, 980

F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in

the light most favorable to the non-moving party when deciding whether a genuine issue of

(5:19CV1893)

material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact.  *Id.* at 248.  The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment.  *Id.*  This standard of review does not differ when reviewing cross-motions for summary judgment versus a motion filed by only one party.  *United Food & Commercial Workers Union Local No. 17A v. Hudson Ins. Co.*, No. 5:11CV2495, 2012 WL 2343905, at *2 (N.D. Ohio June 20, 2012) (Pearson, J.).

### III.  Law & Analysis

#### A.  Overview of ERISA

Congress enacted ERISA to protect "the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and

(5:19CV1893)

beneficiaries of financial and other information with respect thereto, by establishing standards of

conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by

providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C.

§ 1001(b).

ERISA governs all "employee benefit plans" and divides them into the broad categories

of "employee welfare benefit plans" and "employee pension benefit plans." *See* 29 U.S.C. §

1002(1), (2). Employment-based healthcare coverage–like that provided to the Participants in

this case–is made available through "employee welfare benefit plans," which are statutorily

defined to include "any plan, fund, or program . . . established or maintained by an employer or

by an employee organization, or by both . . . for the purpose of providing for its participants or

their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or

hospital care or benefits, or benefits in the event of sickness . . . ." 29 U.S.C. § 1002(1).

ERISA's purpose "is to provide a uniform regulatory regime of employee benefit plans."

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To this end, ERISA is intended to be

inclusive and "liberally construed in favor of protecting the participants in employee benefit

plans." *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 223 (3d Cir. 2010) (quotation and

citation omitted); *see also Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1086 (8th Cir.

2009) (finding ERISA should be liberally construed to "effectuate Congress's intent to protect

plan participants"); *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 589 (9th Cir. 1984) ("ERISA

. . . is remedial legislation which should be liberally construed in favor of protecting participants

in employee benefits plans.").

(5:19CV1893)

Qualification as an ERISA covered plan is meant to ensure that the plan is designed to provide benefits to employees as part of an employment relationship, and that the involvement of an employer or employee organization is not merely tangential. *See Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir. 1994) (finding relevant inquiry is "whether the employer's involvement was substantial enough to have 'established or maintained' the plan").

**B. "The Plan" Arises Under ERISA**

"Determining the existence of an ERISA plan" should be answered in light of the "surrounding circumstances and facts from the point of view of a reasonable person." *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 847-48 (6th Cir. 2006) (finding that in order to distinguish an ERISA from a non-ERISA plan, courts must look to the "nature of the plan itself") (citing *Swinney v. General Motors Corp.*, 46 F.3d 512, 517 (6th Cir. 1995)). "[T]he crucial factor in determining whether [an ERISA] 'plan' has been established is whether the employer has expressed an intention to provide benefits on a regular and long-term basis." *Deibler v. Local Union 23*, 973 F.2d 206, 209 (3d Cir. 1992) (citation omitted).

The sole issue for the Court's determination, at this juncture, is whether the Plan qualifies as an employee welfare benefit plan *under* ERISA. *See* ECF No. 29 at PageID #: 743; ECF No. 30-1 at PageID #: 979. In examining whether the Plan qualifies as an "employee welfare benefit plan" under ERISA, the Court must look to whether the Plan "is established or maintained–(1) by any employer . . . ; or (2) by any employee organization; or (3) by both." 29 U.S.C. § 1003(a); *Kolkowski*, 448 F.3d at 848. An "employee organization" is defined to include "any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in

8

(5:19CV1893)

whole or in part, of dealing with employers concerning an employee benefit plan, or other

matters incidental to employment relationships; or any employees' beneficiary association

organized for the purpose in whole or in part, of establishing such a plan." 29 U.S.C. § 1002(4).

The "established or maintained" requirement under ERISA is "designed to ensure that the

plan is part of an employment relationship . . . [and] seeks to ascertain whether the plan is part of

an employment relationship by looking at the degree of participation by the employer in the

establishment *or* maintenance of the plan." *Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043,

1049 (10th Cir. 1992) (emphasis added); *accord Charles Schwab & Co. v. Debickero*, 593 F.3d

916, 921 (9th Cir. 2010).

### C. "The Plan" Was Established by Employer Goodyear and Employee Organization USW

The records and the circumstances surrounding the creation and maintenance of the Plan

make clear the Plan qualifies as an employee welfare benefit plan under ERISA.

When Goodyear and USW executed the Settlement Agreement in the *Redington* case,

they established the Plan by negotiating and then setting out, in settlement terms, the Plan's

structure and funding source.  ECF No. 30-2.  Goodyear was required to make an initial $1

billion contribution to fund the Plan.  *Id*. at PageID #: 1003.  Goodyear and USW have since

maintained the Plan by negotiating Goodyear's continuing contributions to the Goodyear Trust.

ECF No. 30-3 at PageID #: 1143.  Between 2010 and 2019, Goodyear and its successors have

provided more than $628,300,000 in funding for the Plan.[5]  *Id*.

---

[5] Defendants do not dispute that Goodyear has made continued contributions over
the years.

(5:19CV1893)

In its motion for summary judgment, Defendants do not contest that, under ERISA, Goodyear qualifies as an "employer" and USW, an "employee organization."  *See* ECF No. 29. Defendants argue only that the Plan's relevant documents show Plaintiff established and maintains the Plan and has authority to decide all matters arising in connection with the Plan. *See id*. at PageID # 741-44.

This argument does not persuade the Court that ERISA does not apply to the Plan. Nowhere in the Plan or related documents is it suggested that *only* the Trust Committee established and maintained the Plan.[6]  Defendants' allegation that the Trust Committee established and maintains the Plan–even if accepted–does not negate the fact that additional entities (an employer and employee organization pursuant to 29 U.S.C. § 1002(4)-(5)) also established and maintain the Plan.[7]  Narrowly construing the language in the Plan, Defendants disregard the factual record indicating Goodyear and USW established the Plan and have continued to maintain a program of benefits for the benefit of all Participants in the Plan.  *See Randol v. Mid–West Nat'l Life Ins. Co. of Tennessee*, 987 F.2d 1547, 1550 (11th Cir. 1993) (finding undisputed facts showed employer "established" a system by which payments would be made to participants and "maintained" the plan within meaning of ERISA through regular contributions to participants' premiums).

_____

[6] *See* ECF No. 29-5 at PageID #: 903 (pertinent language of the Plan stating the Trust Committee "as Plan Sponsor has established the Goodyear Retiree Health Care Plan").

[7] ERISA plainly provides that more than one entity may establish a Plan governed by the statute.  Indeed, ERISA covers "any employee benefit plan if it is established or maintained" not merely by "an employer" *or* "by any employee organization," but also when it is established or maintained "*by both*" an employer *and* any employee organization.  29 U.S.C. § 1003(a) (emphasis added).

10

(5:19CV1893)

When it comes to coverage under ERISA, courts examine the functional realities–beyond mere written formalities–to determine ERISA's reach.  An ERISA plan can exist, for example, in the absence of a formal, written plan typically required by the statute.  *See Davidson v. Hewlett-Packard Co*., No. 5:16-CV-01928-EJD, 2019 WL 3842001, at *2 (N.D. Cal. Aug. 15, 2019); *Colarusso v. Transcapital Fiscal Sys., Inc*., 227 F. Supp. 2d 243, 252 (D.N.J. 2002) (looking past formalities to facts surrounding the creation of the employee welfare benefit plan). Courts look to an organized scheme of administering benefits and the "context of the relevant surrounding circumstances." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 939 (9th Cir. 2003); *see also Schwartz v. Liberty Life Assur. Co. of Bos*., 470 F. Supp. 2d 511, 514 (E.D. Pa. 2007) (noting "the source of financing" as a critical factor in determining whether a plan is, as a matter of law, governed by ERISA).  Importantly, if the plan documents, alone, dictated the scope of ERISA, it "would create a perverse incentive for employers to disregard ERISA formalities so as to avoid ERISA's pervasive reach and thwart its requirements." *Guiragoss v. Khoury Bros. Ltd.*, 444 F. Supp. 2d 649, 656 (E.D. Va. 2006) (finding the "principles and ERISA's plain language" when applied to the undisputed record made "unmistakably clear that the Plan in issue" was governed by ERISA).

Worthy of the Court's consideration of the "surrounding circumstances" (*Kolkowski*, 448 F.3d at 847) is that the Plan "unequivocally state[s] that [it] was an ERISA plan." *Nicholas v. Standard Ins. Co*., 48 F. App'x 557, 563 (6th Cir. 2002) (considering ERISA language in employee benefits plan in determining whether plan covered by ERISA).  The Plan and Summary Plan Disposition, for example, detail procedures a Participant must follow in lodging claims and vindicating rights pursuant to ERISA (ECF No. 29-5 at PageID #: 920), the Plan Administrator's

11

(5:19CV1893)

duties under ERISA (*Id*. at PageID #: 922), and fiduciary duties under ERISA (*Id*. at PageID #: 927).

Congress specifically sought "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990).  In considering the surrounding circumstances regarding the *Redington* Settlement Agreement, the subsequent creation of the Goodyear Trust, the Trust Committee, and Plan, the Court finds the uniform regulatory scheme of ERISA appropriately applies.  Defendants' argument–that language in the Plan documents controls whether ERISA applies–is unconvincing.[8]

## IV.  Conclusion

Having considered the "surrounding circumstances" regarding the creation, execution, and maintenance of the Plan "from the view of a reasonable person" (*Kolkowski*, 448 F.3d at 847), the Court finds the Plan falls under the definition of an "employee welfare benefit plan," because it is a "plan . . . which was heretofore or is hereafter established or maintained . . . by an employee organization . . . for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical. . . benefits[.]"  *See* 29 U.S.C.

---

[8] Defendants' filings are devoid of any case law constricting the Court to such a narrow inquiry and finding.

(5:19CV1893)

1002(1).  The undisputed record clearly illustrates the roles Goodyear and USW had in the Plan's

establishment and maintenance.

      Because establishment *or* maintenance by either an employer *or* a labor union–an

employee association–suffices to demonstrate coverage of the Plan under ERISA, this finding,

alone, warrants the granting of Plaintiff's Motion for Partial Summary Judgment.[9]

      For the forgoing reasons, the Court grants Plaintiff's Motion for Partial Summary

Judgment (ECF No. 30).  Defendants' Motion for Partial Summary Judgment (ECF No. 29) is

denied.


      IT IS SO ORDERED.


   August 12, 2020               */s/ Benita Y. Pearson*
Date                             Benita Y. Pearson
                               United States District Judge

---

      [9] The Court need not reach the issue of whether the Trust Committee is an "employee beneficiary organization" for purposes of determining whether the Plan arises under ERISA.